Good morning your honors, my name is Tracy Minor and I'm here with my associate Megan Siddell and we're from DEMEO LLP and we have the privilege of representing Mr. Alphas who is in the courtroom. Your honors, this case goes to the issue of how do you value loss in an insurance fraud case. The district court below found as a matter of law that it's the entire amount of the claims regardless of how much legitimate claims are declared in flesh. I'm going to use legitimate and illegitimate. It is our position that you have to take out the legitimate portions of the claim. Both for intended loss and for actual loss. And the reasons for that are two-fold. First, the guidelines, this court's precedence, criminal law generally in sentencing tries to judge the culpability of the defendant. And a defendant who has a legitimate claim for $100 in insurance money but submits a claim for $150 or $110 is less culpable than somebody that has no claim whatsoever and puts in a totally false claim for the $150. That's a level of culpability that's different. And the district court's finding would nullify that difference. Anytime anybody put in an insurance claim that was higher than was expected, he would or she would be totally responsible the same way as if there was no legitimacy to the claim at all. The second reason, your honors, is because that's not how the guidelines look at other frauds. Mortgage fraud, you get the value of the collateral. False claims, you get the value of the legitimate part of the claim, even though there's a civil statute that says it's void ab initio. Bank fraud, same thing. You get the value of the benefit. Travel expenses, the court found that... Is there a separate guideline for mortgage fraud or mortgage fraud is just, you mean intended loss? Do we know in those cases whether there's a similar provision as there was in this insurance contract that the void versus voidable? We don't know, your honors. There is an application note, I should be fair to say, in a mortgage fraud case. With respect to the ab initio... The application note says... That you get the value of the collateral. Seemingly independent of what, without regard to whether... And the value of that collateral is easily found. Correct. Now in this case, just a fact question I'd like you to answer for me. Certainly. At the sentencing at any time, did your client attempt to show what portion of each claim was real and what portion was not? My recollection of the record is he couldn't do that. Your honors, he did do that in connection with the pre-sentence report, which is in the sealed addendum. He presented his objections to each loss and presented a chart, which is on page 28 of the sealed addendum. So he did attempt to put in, here's the legitimate portions, here's the illegitimate portions. At the sentencing argument, he was not allowed to do that because the judge found as a matter of law that that was irrelevant. So there was no fact finding as to whether his numbers, which he submitted to the probation department, were accurate or not accurate. With respect to your honors question as to well, what effect does this void or fraud clause have? There are cases where, for example, in the travel voucher situation where you make a false claim to the government. I had $100 worth of real travel expenses I put into. There's a civil statute that says if you make a false claim, you forfeit any of it. That's fine for civil law and the government can go and forfeit the civil statute. The same way that the insurance companies can go forfeit whatever they paid. But that doesn't go for criminal law. It doesn't go to what the defendant expected. It doesn't go to what the actual loss of the insurance company is. Government procurement fraud, the same thing, where I put in a bid and I make a misrepresentation. I say I have no criminal record. What's your answer to the, I guess, policy argument for reading the guideline the other way that I think the district court gave, maybe the government gives it, which is in terms of moral culpability, the reason why I'm just doing marginal inflations of my legitimate claims is because I think it's very likely I'll get away with it then. Whereas if I make a bigger claim, I'm worried I'll get caught. So that's their argument for why we shouldn't read intended loss your way, because if we're trying to measure culpability, although it looks like they're doing less cheating, I understand the district court to be saying maybe they're just doing more sophisticated cheating. If that's the case, then your honor, the entire loss metric of the guidelines makes no sense. Because the loss metric, the intended loss and the actual loss and the penalty as the amounts go up, equates loss with culpability. If loss is a proxy for culpability, then the amount of the loss has to mean something. Correct, your honor. Absolutely. And that's the problem. Otherwise it would say, okay, if I have... Smaller ones are more penalized than bigger ones. Exactly, your honor. What about the argument that if you're correct, what's the risk? If I have to pay the money back, I get a credit for what I was really owed, and so it's worth the risk. I may get caught and it may cost me some money to pay it back. But then again, it might not. That's why, your honors, there is a difference between actual loss and intended loss. So the guidelines say, you take the higher. In other words, if I get caught, and even if I inflated it, I don't get away with it, even though the insurance companies pay less. I'm still on the hook for what I intended. And my argument is what I intended is the delta. I'm still on the hook for it. That's why there's intended loss. And that's what the guidelines say. If intended is higher than actual, you take intended. You take the higher of the two. And so you're always going to be penalized. You're never going to get off scot-free under the guidelines. In addition to which, of course, the guideline calculation for loss doesn't affect civil liability, which is separate. The insurance company has rights. But tell me, you're also contesting the restitution award based on actual loss? We are, your honor. And the argument is exactly the same. Some portion of what the insurance company paid, they should have paid anyway. So our argument is the exact same. In other words, because there were legitimate losses, yes, the insurance company paid the legitimate losses. It seems to me here's the argument the other way. Intended loss has to take into account to some extent the intent of the fraudster. The fraudster's intent is to swindle the insurance company. And your theory is a $100,000 claim. He puts in a claim for $500,000. I can see the argument he's only trying to swindle them out of $400,000. But actual loss isn't measured in terms of the intent. And if you have in the policies, as you do in this case, the clause that voids the loss completely, when the insurance company pays out money, it pays it out in a circumstance where it wouldn't have had to pay anything out because of the fraud. So I see that because the fraudster's intent doesn't figure into actual loss, isn't there a distinction there? Some courts have found that there's a distinction, and I can understand your distinction. I would make two arguments to that. First, criminal law is not necessarily the same as the civil law. Second, you owe me, I'm a guarantor on a loan. There's a default. The lender says how much do you owe me? I say, you owe me $150,000. Really, you only owe me $100,000. They pay the $150,000. The guarantor pays the $150,000. Clearly, they would have had to pay the $100,000 anyway. Now, the issue is what does this void for fraud clause do to it? And some courts, they've taken different approaches, to be honest. The Eighth Circuit has taken the approach, yes, it's totally void, but you get your premiums back. You don't get to keep the premiums and not have to pay a dime. Other people, other courts have said, no, it's void. We're not going to consider premiums. Other courts have said, you take the delta. Just very briefly, Your Honor, I don't think it's void. Can I just, so I get the bottom line of this, is essentially the void clause is irrelevant to the sentencing. That's your position? For criminal law purposes, that's my position. So there's just no difference between a fraud under a policy that has a void clause and a fraud under a policy that doesn't have it? For criminal law purposes, that's my argument, Your Honor. Just sort of curious about, when you have a loss of this kind, you have a lot of other costs that the insurance company had. They lost the use of the money, which they would have had but for the fraud. They had the cost of investigation, et cetera. So does the court have some leeway in determining what is appropriate here, if you look at everything which happened? Not with respect to the examples you just gave, Your Honor, because the guidelines specifically say you don't take into account the interest. You don't take into account the cost of investigation. So none of that has... So none of that has a relevance. It has a relevance in the civil suit, absolutely. The insurance company can come in and sue my client and say he has to pay back every dime, he has to pay back the cost of investigation, he has to pay back the interest, but not for criminal liability. For the criminal portion of the sentence, none of that's relevant? Correct, Your Honor. And as a basic, just last thing on this, so if it's, is that because whether the person has a void clause or not is, in your view, just not relevant to the culpability of the defendant, therefore the guidelines shouldn't be read to take it as a significant factor? Absolutely. I'm not more culpable because of the way my insurance policy is written. I'm culpable for what I do. I'm culpable for the fraud I commit. The insurance policy language can't determine my culpability. Thank you, Your Honor. Good morning, Your Honor. May it please the Court. This question of whether the void for fraud clause is relevant is of central importance. It is certainly relevant. It's one of the primary factors, if not the chief factor, that determines the pecuniary harm to the insurance company in this case. The loss guideline is a proxy for culpability. It's true. But it's not a perfect proxy. And it sets out a manner for calculating pecuniary harm. And here the pecuniary harm to the insurers is the difference between what they would have paid had they not discovered the fraud and what they would be obligated to pay. But isn't that, isn't that looking at it exactly backwards? This is intended loss. It's not the insurance company's intent that we're concerned with. It's the fraudster's intent. Right? His intent, when he perpetrates the fraud, is that the fraud's going to succeed. If he didn't intend that and believe that, he wouldn't perpetrate it. Right? His intent, so that intended loss becomes a proxy for, how much is he going to get away with that he wouldn't have been entitled to anyway? Your Honor, the language used in the guidelines is intended loss. Yeah. But as this Court has stated, a better term would be expected loss. All right. Same, same way. Because the defendant at that point expects to succeed in the fraud. So his expected loss is the, it comes out the same place. The amount that he's going to swindle out of the insurance company. That's what he expects. That's what, that's what he intends. I think what he expects It may be a different issue on actual loss, but we can get to that later. I think what the defendant intends is full payment. So he does intend to swindle the funds he hopes, indeed he expects, to get the full amount that he sought. Right. So the question is, how much does that harm the person that he's swindling? And to measure that Just to start, because I, why don't I just test a different answer that you could give on that one instead of focusing on harm? What would be wrong with saying that what he's He's not entitled to any of it. So he actually intends the entirety of the payout as part of his fraud. I think there's nothing wrong with that, Your Honor. I think it may place a bit too much importance on the subjective intent of the defendant as opposed to the objective expectations of a person in the defendant's position. But there's certainly nothing wrong with it. And just, that places too much focus on the subjective intent because you're saying that would depend on whether he knew about the void clause or not? That's right. I think it makes that question more important. But then if we, if you're taking that position, that seems to support the defendant's view, which is that we shouldn't presume, one way or the other, whether he knows about the void clause, which kind of goes to the idea maybe it's irrelevant. Well, I think, recall, Your Honor, that I said that it may place too much importance on the subjective intent. Under Massachusetts law, even if you haven't read the policy, aren't you supposed to be charged with the knowledge of what the policy actually is? I don't, I can't presume to know that, Your Honor. I don't know. I do know that under Massachusetts law, for instance, if an insured person does not cooperate with an insurance company during their investigation, then the policy is deemed void. And certainly that would include lying to the insurance company during the investigation as having a theory of fraud. What does this do? Go ahead. Well, if you don't give notice is another way that a policy could not give you coverage and so forth. And that's why I asked that question. If knowledge, if you're supposed to have knowledge, even if you claim, I didn't read it, I didn't know, doesn't that make a difference? Yeah. And I believe the sorts of penalties that we were just discussing, Your Honor, happen whether or not you claim that you've read the policy. It would be too convenient if that were a defense that's sort of a cure to all of these problems. But the interpretation that you put on this, all right, this destroys, does it not, the utility of amount of loss, intended loss, as a proxy for culpability. Because if I have some storm damage in this brutal winter to my home, and I have a lot of the, I have $400,000 worth of damage, but I put in a claim for $500,000, on your theory, if I've got one of these void clauses in my policy, I'm going to be a judge for guidelines purposes, just as culpable as the person who completely makes up the loss, had no damage, may not even own the home, just gets a phantom insurance policy, puts in a $500,000 claim. That's right, Your Honor. So amount of loss does not become a proxy for culpability, yet the guidelines say, and our case law says, that that's the purpose of the amount of loss calculation. That's an illustration, Your Honor, of a place in which the guidelines may not be a perfect proxy for culpability, depending on your moral interest. They're not any proxy for culpability, if your theory is correct. The place to make up the difference, if the judge, if the district court judge perceives a difference between the loss amount as calculated by the guidelines and what the district court judge feels is the level of culpability, is to do with the district court judge to hear. Consider the matter under the 3553A factors and come up with a different sentence. So to return to the mortgage fraud cases, not that they're a perfect comparison, under the case law in this circuit, the loss in those cases ends up being the difference between the loan amount and the eventual amount that the lender is able to recover when the house is sold out of foreclosure. And so in cases like Apollon, sometimes that difference was extraordinarily great. The loans were made sometimes with very high, even inflated prices at a time when property values were high, and the properties were sold out of foreclosure after a financial collapse. And many defendants, including the defendants in Apollon, argued that no one could have foreseen that sort of a level of change in the values here, and that none of these defendants intended that level of harm for the victims, for the lenders. And this court's precedent has said emphatically, when calculating the loss guidelines, that you have to take that entire loss into account. It was reasonably foreseeable that this could happen. However, then when sentencing defendants, the district court judge is entitled to say, I don't think you knew that this was going to happen. This is an extraordinary event, this financial collapse. And that has happened. Indeed, it happened in the district court case, United States versus Soto. Appellate argument just argued yesterday. So there is a place for the district court judge to account for differences when the district court judge perceives them in the actual culpability of the defendant, and this proxy calculation that the guidelines requires the district court judge to make. Look, can I, before your time runs out, can I switch you over to restitution? Yes, Your Honor. All right. And let's leave to one side for the time being. I understand you have a waiver argument, but put that to one side for the time being. All right. You've argued that the restitution calculation should be based on actual loss, which you then compute in exactly the same way that you compute intended loss, is that correct? Yes, Your Honor. Okay. Now, I find that restitution, of course, isn't under the guidelines. And we have some fairly clear case law on restitution. And what that case law says, as I read it, is that in determining restitution, you take on the one hand the amount that the fraudster gained by the fraud, and you take on the, and you subtract from that the amount that would have been left with the victim had the fraud not occurred. And I have this, I have trouble squaring our restitution case law with your amount of loss calculation for restitution. So as you articulated, Your Honor, the amount that would be left with the victim had the fraud not occurred. Here, the fraud at least allegedly wraps up both a legitimate and an illegitimate portion. And it's worth noting, in response to the question earlier about the defendant's calculation, that's addressed in the first objection to the PSR. His figures come entirely from his own memory. No, I know that. And we can't get into, in an appellate court, we can't get into what the exact amounts are because it's perfectly obvious that if the appellant's theory on either intended loss or restitution theory is correct, we're going to have to remand to get amounts calculated. I'm concerned with what the theory is, all right? What the result would have been absent the fraud as compared to what the result was due to the fraud. That's what our case law on restitution says. I don't know what there is about this case that would require us to apply some different rule, or better say, that would permit us to apply some different rule. Your Honor, I think the restitution statute also speaks in terms of pecuniary harm to the victim. Here, the insurance company. And since the fraudulent act, at least as we're treating it here for purposes of argument, was the submission of an insurance claim that had both legitimate and illegitimate portions. May I continue? You may. Thank you. Had both legitimate and illegitimate portions. We can't simply ask what would happen if there were no fraud at all because what would have happened would be the defendant would continue to pay premiums, the insurance company would never pay a claim of any sort because there hadn't been a claim. But given that there's... Well, no, that's not true. What would have happened on the defendant's theory, what would have happened if there had been no fraud is there would have been a claim for the amount of the actual damage and that would have gotten paid. Yes, Your Honor. But given that there is a fraud, there is no obligation to pay whatsoever. Can I just... This last point. Is that because your argument is importing knowledge and therefore culpability of the void clause? I think it's... Because I thought you were saying to me that would be problematic because it would make it subjective. It's simply importing the effect of the void clause. But then it has nothing to do with culpability? Is that the government's position? For restitution, that's right. But also for intended loss? It can't... If he doesn't know about it, if it's not relevant whether he knows that this is a void policy or not a void policy, then it just can't be relevant to culpability. Again, Your Honor, I think the case law in this circuit talks about the reasonable expectations of a person in the defendant's position. And the reasonable expectations in mortgage fraud case mean you can expect the entire value to go away. And in this sort of case, those include the fact that your entire policy may be void by this case here. So no further questions.